UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KAREN SUE SMITH, | CASE NO. 1:12CV2280 |
| Plaintiff, | JUDGE CHRISTOPHER BOYKO. |
| | Magistrate Judge George J. Limbert |
| v. | |
| CAROLYN COLVIN[1], | **REPORT AND RECOMMENDATION** |
| COMMISSIONER OF | **OF MAGISTRATE JUDGE** |
| SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff Karen Sue Smith ("Plaintiff") seeks judicial review of the final decision of Carolyn Colvin ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her applications for Disability Insurance Benefits ("DIB") and Disabled Widow's Benefits ("DWB"). ECF Dkt. #1.  For the following reasons, the undersigned recommends that the Court affirm the decision of the Commissioner.

I.  **PROCEDURAL AND FACTUAL HISTORY**

  A.  **PROCEDURAL HISTORY**

On January 4, 2008, Plaintiff filed her applications for DIB and DWB alleging disability beginning July 15, 2007 due to chronic lung problems, heart problems, fibromyalgia, and depression.  ECF Dkt. #11 at 140-151, 165.  The SSA denied Plaintiff's applications initially and on reconsideration.  *Id.* at 76-94.  On August 25, 2008, Plaintiff filed a request for an administrative hearing.  *Id.* at 95.  On July 22, 2010, an Administrative Law Judge ("ALJ") conducted an administrative hearing where Plaintiff, represented by counsel, and a vocational expert ("VE"),

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

offered testimony. *Id.* at 25. On June 3, 2011, the ALJ issued a Decision denying benefits. *Id.* at 11-19. Plaintiff filed a request for review, which the Appeals Council denied. *Id.* at 1-3, 138.

On September 10, 2012, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On February 25, 2013, Plaintiff filed a brief on the merits. ECF Dkt. #13. On April 11, 2013, Defendant filed a brief on the merits. ECF Dkt. #14. On April 29, 2013, Plaintiff filed a reply brief. ECF Dkt. #16.

### B.    RELEVANT MEDICAL AND TESTIMONIAL HISTORY

Since the only errors alleged by Plaintiff concern her conditions of obesity and depression, the undersigned will address only these conditions.

#### 1.    OBESITY

Medical records relating to Plaintiff's obesity show that on November 30, 2004, she presented to Dr. Finizia for evaluation of thyroid problems. ECF Dkt. #11 at 226, 358, 471. Dr. Finizia noted that Plaintiff had an elevated TSH and increased weight gain. *Id*. Plaintiff weighed 213 pounds. *Id.* at 227. He specifically noted upon evaluation that Plaintiff presented with no depression or anxiety symptoms. *Id*. His assessment included hypothyroidism not otherwise specified, and obesity not otherwise specified, but partially related to thyroid disease. *Id.* He further remarked that Plaintiff had previously been on Synthroid for hypothyroidism, but she was recently noncompliant with her medicine. *Id.*

On December 20, 2005, Dr. Finizia examined Plaintiff for left-sided chest pain and shortness of breath and he recorded her weight at 205 pounds. ECF Dkt. #11 at 478.

On March 24, 2006, Plaintiff's gynecologist recorded her weight at 218 pounds with a Body Mass Index ("BMI") of 34.14 and noted that she was obese. ECF Dkt. #11 at 368-369. She was advised to undertake a healthy diet and to exercise. *Id.* at 369.

In a July 13, 2006 medical note, Dr. Kreymerman, a plastic surgeon, indicated that Plaintiff consulted with him about a breast reduction, but he found her to be a poor candidate for surgery because of obesity as her body mass index was 35.40 and she was five feet seven inches tall and weighed 226 pounds. ECF Dkt. #11 at 234-235. He diagnosed her with obesity and referred her to a weight loss clinic. *Id*.

On July 31, 2006, Plaintiff presented to a nutritionist who indicated that Plaintiff was five feet seven inches tall and weighed 101.6 kilograms with a body mass index of 35.07. ECF Dkt. #11 at 237. Plaintiff was instructed on a lower fat eating plan and instructed to increase her physical activity. *Id*. at 238.

On December 13, 2006, Plaintiff presented to Dr. Finizia for chest congestion and ear pain and he recorded her weight at 230 pounds. ECF Dkt. #11 at 239, 372.

On September 10, 2007, Dr. Finizia examined Plaintiff and listed her weight at 232 pounds and her BMI at 36.34. ECF Dkt. #11 at 322, 375, 443. He noted that Plaintiff's hypothyroidism was controlled on medication. *Id.* at 323, 444.

On October 10, 2007, Plaintiff's gynecologist listed her weight at 231 pounds with a BMI of 36.18. ECF Dkt. #11 at 245, 381. She again advised Plaintiff to maintain a healthy diet and to exercise. *Id*. at 246.

On January 30, 2008, Dr. Finizia followed up with Plaintiff after an emergency room visit for left-sided chest pain. ECF Dkt. #11 at 332, 483. He listed her weight as 234 pounds and her BMI at 36.65. *Id*. at 333, 386.

On March 3, 2008, Dr. Krause, an agency examining physician, performed pulmonary function studies at the request of the agency. ECF Dkt. #11 at 292. He listed Plaintiff's height at 65 inches and her weight at 236 pounds. *Id*. at 294.

On March 24, 2008, Plaintiff presented to her gynecologist who recorded her weight at 218 pounds and found that she was obese. ECF Dkt. #11 at 315. The doctor indicated that she educated Plaintiff about a healthy diet and exercise. *Id*. at 316.

On April 4, 2008, Dr. Finizia examined Plaintiff for continued left-sided chest pain and he listed her weight at 236 pounds. ECF Dkt. #11 at 389, 484.

On June 23, 2008, Plaintiff presented to Dr. Nicolacakis, a pulmonary specialist, and she listed Plaintiff's weight at 237 pounds with a BMI of 37.20. ECF Dkt. #11 at 392, 487. She noted that Plaintiff was obese. *Id.* at 394.

On September 22, 2008, Plaintiff followed up with Dr. Nicolakis, who recorded her weight at 234 pounds with a BMI of 36.65. ECF Dkt. #11 at 397, 459.

On February 23, 2009, Dr. Nicolacakis noted Plaintiff's weight at 234 pounds with a BMI of 36.73. ECF Dkt. #11 at 494.

On July 1, 2009, Dr. Finizia examined Plaintiff for complaints of ankle swelling and pain with chest discomfort and he recorded her weight at 233 pounds. ECF Dkt. #11 at 502. Plaintiff indicated that she was attempting to increase her walking and had stopped drinking diet soda and was drinking water. *Id.*

On August 22, 2009, Plaintiff presented to the emergency room for chest pain and left arm numbness and tingling. ECF Dkt. #11 at 560-561. The doctor's assessment was chest pain that appeared more musculoskeletal than cardiac, but Plaintiff was admitted for cardiac rule out. *Id.* Plaintiff was cleared by cardiac testing and evaluation and no acute pulmonary findings were revealed upon a chest x-ray. *Id.* at 562, 571.

On August 24, 2009, Plaintiff presented to Dr. Nicolacakis and her weight was recorded at 235 pounds, with a BMI of 36.81. ECF Dkt. #11 at 505. Plaintiff had indicated that she had been under stress after her father died. *Id.*

Dr. Finizia had referred Plaintiff to Dr. Schnell for her chest pain and on September 2, 2009, Dr. Schnell documented Plaintiff's reports of increased stress due to family members' illnesses. ECF Dkt. #11 at 525. He noted that she weighed 230 pounds and had a BMI of 36.02. *Id.* He diagnosed noncardiac chest discomfort, obesity, and depression, among other diagnoses. *Id.* at 526. He noted that Plaintiff had been taking Celexa for her depression and increased the dosage. *Id.* He encouraged her to lose weight. *Id.*

On December 21, 2009, Dr. Finizia examined Plaintiff for her left-sided chest pain and indicated that Plaintiff had been evaluated by pulmonary and cardiology specialists and they found that the pain was not related to her respiratory status or her heart. ECF Dkt. #11 at 532. He noted her weight at 231 pounds. *Id.*

On February 15, 2010, Dr. Nicolacakis followed up with Plaintiff and noted Plaintiff's weight at 238 pounds with a 37.28 BMI. ECF Dkt. #11 at 537. She reassured Plaintiff that the chest pain was musculoskeletal, as she noted she had before. *Id.* at 538.

On June 1, 2010, Plaintiff followed up with Dr. Finizia for her respiratory symptoms, and he recorded her weight at 240 pounds with a BMI of 37.59. ECF Dkt. #11 at 555.

On June 16, 2010, Plaintiff was referred to Dr. Sivak for her chest wall pain and breathing issues. ECF Dkt. #11 at 552. Dr. Sivak repeated a note by Dr. Nicolacakis on February 15, 2010 and he added a social history note which stated that Plaintiff was caring for a child with Bechet's syndrome and her ex-daughter-in-law was moving in with her and her three children as well. ECF Dkt. #11 at 553. It was further noted that Plaintiff was applying for social security. *Id.* Dr. Sivak listed his impressions as dypnea, moderate obesity, depression and fibromyalgia. *Id.* He commented that "[d]ypsnea seems out of proportion to physical findings and previous PFT's and may be impacted by depression and weight." *Id.*

On July 15, 2010, Dr. Sivak followed up with Plaintiff with test results showing a normal echocardiogram and moderate obstruction on pulmonary function test but with good response to bronchodilator. ECF Dkt. #11 at 580. He examined Plaintiff and noted her weight at 240 pounds with a BMI of 37.59. ECF Dkt. #11 at 581. He continued her medications and told her to increase exercising and he reassured her that she had reasonable breathing reserve in which to do so. *Id.*

On October 28, 2010, Plaintiff followed up with Dr. Finizia and noted her weight at 240 pounds with a BMI of 37.59. ECF Dkt. #11 at 583. He noted that Plaintiff's COPD was stable. *Id.* at 584.

On March 3, 2011, Plaintiff presented to Dr. Finizia with complaints of lower left quadrant pain and loose stools. ECF Dkt. #11 at 605. Her weight was 237 pounds. *Id.*

On April 20, 2011, Dr. Sivak recorded Plaintiff's weight at 243 pounds with a BMI of 38.06, he noted her fatigue, and he diagnosed obesity and recommended that she increase her exercise. ECF Dkt. #11 at 618-619. He noted no respiratory complaints from Plaintiff and diagnosed her COPD as stable and diagnosed obesity and he wanted to rule out sleep apnea. *Id.*

On May 6, 2011, Plaintiff's gynecologist examined her and noted her weight at 242 pounds with a BMI of 37.89. ECF Dkt. #11 at 622. She recommended that Plaintiff undertake a healthy diet and exercise. *Id.* at 624.

On May 11, 2011, Dr. Finizia examined Plaintiff for her complaints of lower abdominal pain and loose stools and he found her weight at 241 pounds. ECF Dkt. #11 at 628. He referred her to a specialist who found no evidence of diverticulitis, and he found upon examination that she had a normal gait, and no problems with her extremities. *Id.* at 632-635.

### 2.    **DEPRESSION**

As indicated above, Dr. Finizia noted that Plaintiff had no symptoms of anxiety or depression when he first began treating Plaintiff on November 30, 2004. ECF Dkt. #11 at 227. Plaintiff's gynecologist also noted that Plaintiff had a negative psychological evaluation when she examined her on March 24, 2006. *Id.* at 230, 315, 368.

Dr. Kreyerman also indicated in his July 13, 2006 medical note consultation for a breast reduction that Plaintiff showed no psychiatric symptoms of anxiety or depression. ECF Dkt. #11 at 236. Plaintiff's gynecologist again noted on October 10, 2007 that Plaintiff presented with no psychological issues. *Id.* at 244, 328, 382.

On June 11, 2008, an agency psychologist reviewed Plaintiff's records for a psychological evaluation and he opined that she had no medically determinable impairment. ECF Dkt. #11 at 343. He explained that while depression was mentioned in Plaintiff's file, Plaintiff stated when contacted on two occasions by agency representatives that she did not suffer from depression. *Id.* at 354.

Upon examination by pulmonary specialist Dr. Nicolocakis on June 23, 2008, the doctor noted no depressive or anxiety symptoms upon examination. ECF Dkt. #11 at 394, 489.

On December 3, 2008, Dr. Finizia examined Plaintiff and noted that she had reported increased stress from caring for a family member and was now having to care for children that the family member had been caring for as well. ECF Dkt. #11 at 516. Among other conditions, Dr. Finizia diagnosed Plaintiff with anxiety and noted: "chest pain associated with increased stressors, not typical for cardiac etiology, associated depression, will initiate SSRI therapy." *Id.* at 517.

On August 22, 2009, Plaintiff presented to the emergency room complaining of chest pain since June of 2009 with recent left arm pain and tingling. ECF Dkt. #11 at 560. Plaintiff reported that she was under a "rather undue amount of stress" from caring for her father who had recently passed away and caring for her brother who had brain surgery. *Id.* It was noted that Plaintiff "looks

-6-

depressed." *Id.* Although assessed as musculoskeletal in nature, she was admitted to rule out cardiac issues. *Id.* at 561. Plaintiff was cleared by cardiology and released. *Id.* at 562.

On September 1, 2009, Dr. Finizia examined Plaintiff after she had gone to the emergency room in August of 2009 for chest pain and left arm numbness. ECF Dkt. #11 at 522. He had sent her for an exercise stress test which came back normal and he noted that Plaintiff reported increased stress from family deaths. *Id.* He diagnosed anxiety and commented that the anxiety may be a factor for Plaintiff's chest pain. *Id.* at 523.

Dr. Finizia had referred Plaintiff to Dr. Schnell for her chest pain and he noted Plaintiff's reports of increased stress due to family members' illnesses. ECF Dkt. #11 at 525. Dr. Schnell noted that Plaintiff weighed 230 pounds and had a BMI of 36.02. *Id.* He diagnosed noncardiac chest discomfort, obesity, and depression, among other diagnoses. *Id.* at 526. He further noted that Plaintiff had been taking Celexa for her depression. *Id.* He encouraged her to lose weight. *Id.*

On February 15, 2010, Dr. Nicolacakis examined Plaintiff and noted that Plaintiff reported that she was depressed and was wondering if it was fibromyalgia or if she needed to see a psychiatrist. ECF Dkt. #11 at 537. Plaintiff further indicated that she still felt depressed because both of her parents had died in the last year. *Id.* In her assessment, Dr. Nicolacakis found that Plaintiff had musculoskeletal chest pain and she indicated that she had reassured Plaintiff that it was not likely in her chest. *Id.* at 538. Dr. Nicolacakis then noted: "Perhaps she is also depressed?" and ended her assessment note. *Id.*

On June 1, 2010, Dr. Finizia examined Plaintiff and found that she had anxiety symptoms and recent stressors, but the medications were controlling her symptoms. ECF Dkt. #11 at 555. He assessed her with anxiety and commented that she had associated depression, "controlled on med" and she should continue on Celexa. *Id.* at 556.

On June 16, 2010, Plaintiff was referred to Dr. Sivak for her chest wall pain and breathing issues. ECF Dkt. #11 at 552. Dr. Sivak repeated Dr. Nicolacakis' February 15, 2010 note and a social history note was added which stated that Plaintiff was caring for a child with Bechet's syndrome and her ex-daughter-in-law was moving in with her and her three children as well. ECF Dkt. #11 at 553. It was further noted that Plaintiff was applying for social security. *Id.* Dr. Sivak

listed his impressions as dypnea, moderate obesity, depression and fibromyalgia. *Id.* He commented that "[d]ypsnea seems out of proportion to physical findings and previous PFT's and may be impacted by depression and weight." *Id.*

On July 15, 2010, Dr. Sivak noted Plaintiff's report of a high degree of stress in caring for a child with Bechet's syndrome. ECF Dkt. #11 at 581.

Dr. Finizia noted upon examination on March 8, 2011 that Plaintiff continued to have depressive symptoms due to increased stressors in caring for a family member who was chronically ill. ECF Dkt. #11 at 603. He diagnosed Plaintiff with major recurrent depression and increased her Celexa dosage. *Id.* at 606.

On April 20, 2011, Dr. Sivak again noted Plaintiff's stress in dealing with a son who has Bechet's syndrome. ECF Dkt. #11 at 619.

On May 6, 2011, Plaintiff's gynecologist examined her and noted a negative psychological examination ECF Dkt. #11 at 622.

On May 11, 2011, Dr. Finizia examined Plaintiff and indicated that Plaintiff was attempting to obtain disability due to psych reasons. ECF Dkt. #11 at 628. He noted her report that she has a fear of death and of not waking up, she had rapid onset and frequent panic attacks and was restricting her daily activities, increasing her sleep, and was fatigued and avoiding her family. *Id.*

A May 14, 2011 note in Dr. Finizia's file which he signed indicated that Plaintiff followed up with her physical complaints, and she presented with no psychiatric symptoms such as sleep disturbance, anxiety, memory loss or depression. ECF Dkt. #11 at 630, 635.

### **3.    TESTIMONY AT ALJ HEARING**

At the ALJ hearing, Plaintiff testified that her lung pain prevented her from working full-time. ECF Dkt. #11 at 43. She explained that the doctors thought that it was fibromyalgia pain because nothing was revealed on tests that they conducted. *Id.* at 44. She further stated that the fatigue from fibromyalgia also prevented her from working. *Id.* at 45. She stated that it felt like something was eating her lungs, she had sharp pain in her chest, her arms felt numb, and she had restless legs at night. *Id.* at 46. She also indicated that she has depression and she cannot sleep, but she cannot go to counseling because her son has Bechet's syndrome. *Id.* at 47. She also explained

-8-

that she had always weighed 115 pounds, but in the last five years, she had gained due to thyroid trouble and stress relating to caring for her parents and her brother, who had all died. *Id*. at 50-51. She testified that she could lift and carry about ten pounds for fifteen minutes before getting tired, she barely made a six-minute stress test when walking, and her arms get tired just from driving a car. *Id*. at 47-48.

## II.     SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffered from COPD, hypothyroidism, degenerative disc disease of the thoracic spine, and fibromyalgia, which qualified as severe impairments under 20 C.F.R. 416.920(c). *Id.* at 19. The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925, 416.926). *Id*.

The ALJ ultimately concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.1567(b), except that Plaintiff had to have a sit-stand option and: could only occasionally climb ramps and stairs or bend, balance and stoop; could not kneel or crawl; and could not work in an environment that had pulmonary irritants or hazardous conditions. With this RFC, the ALJ determined that Plaintiff could perform her past relevant work as a mortgage broker, loan officer and loan processor, which actually limited Plaintiff to sedentary work. *Id.* at 18. The ALJ therefore found Plaintiff not disabled and not entitled to social security benefits. *Id.*

## III.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

Under 42 U.S.C. § 402(e), a widow may qualify for disability benefits if (1) she is the widow of a wage earner who died fully insured, (2) she has attained the age of fifty but not yet sixty, (3) she is disabled as defined in the social security statute, and (4) her disability began before the end of the prescribed period. 42 U.S.C. § 402(e); *see also* 20 C.F.R. § 404.335.

To be eligible for benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423(a) & (d), 1382c(a). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing her past job and (2) engaging in

-9-

"substantial gainful activity" that is available in the regional or national economies. *Id.* Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a) (4), 416.920(a)(4):

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d

525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V. ANALYSIS

### A. STEP TWO DETERMINATION REGARDING DEPRESSION

Plaintiff first challenges the ALJ's Step Two finding that her depression was not a severe impairment. ECF Dkt. #13 at 8-13. She contends that the ALJ erred in finding that her depression was not a medically determinable impairment at Step Two. *Id.* at 8-9. She further asserts that even if it was not reversible error for the ALJ to find her depression not a severe impairment at Step Two, it was nevertheless reversible error when the ALJ failed to meaningfully consider this impairment at the subsequent steps in her evaluation. *Id.* at 10-13.

The ALJ specifically found at Step Two that Plaintiff's depression was not a severe impairment. ECF Dkt. #11 at 14. She based this finding upon the reports of two agency contacts that Plaintiff had in which Plaintiff reported to the representatives that she was not depressed and had no plans to seek treatment for depression. *Id*. The ALJ also noted that the agency representatives who had contact with Plaintiff reported that Plaintiff informed them that she was able to care for her child and herself, she did household chores, she had no memory or concentration problems, and she socialized with her family and friends. *Id.* The ALJ cited to Plaintiff's hearing testimony in which she stated that she misunderstood what the agency representatives were asking her as she thought they were asking whether she was mentally ill and she did not consider herself mentally ill. *Id*. Nevertheless, the ALJ determined that Plaintiff's depression was not a medically determinable impairment because the medical records showed that Plaintiff did not mention depression to her doctors and she did not seek treatment or medication for depression. *Id.* at 15. She also found that no medical evidence suggested that Plaintiff's depression lasted more than 12 months. *Id*.

-11-

At Step Two, the ALJ determines whether a claimant's impairments are severe and whether they meet the twelve-month durational requirement. 20 C.F.R. § 404.1520(a). At this Step, the claimant bears the burden of proving the threshold requirement of a "severe impairment." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). The claimant must also show that she suffered from a medically severe impairment or impairments that lasted or could be expected to last for a continuous period of at least twelve months. *Id.* The Court must apply a de minimis standard in determining severity at Step Two. *Id.* at 862. An impairment or combination of impairments is not severe "...if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). The types of "basic work activities" that qualify for use in the regulations are described in 20 C.F.R. §404.1521(b). An impairment can be found non-severe only if it could constitute "a slight abnormality which has such a minimal effect on the individual that it could not be expected to interfere with an individual's ability to work, irrespective of age, education and past work experience." *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 89-90 (6th Cir. 1985). The goal of Step Two is to screen out totally groundless claims. *Id.* at 89. In *Higgs*, the Sixth Circuit affirmed the Appeals Council's determination that the claimant had failed to prove that she suffered from more than slightly or minimally impairing ailments. 880F.2d at 863. The Sixth Circuit in particular held that it was the claimant's burden to prove the severity of her impairments and she did not do so concerning her arthritis impairment as she merely showed a diagnosis of arthritis with nothing about its severity and had doctors' reports that were silent as to limitations caused by or the intensity, frequency and duration of the arthritis. *Id.* (citations omitted).

The undersigned recommends that the Court find that substantial evidence supports the ALJ's determination that Plaintiff's depression was not a severe impairment. While the ALJ erred in finding that Plaintiff did not report depression or receive medication for her depression, Plaintiff, similar to the claimant in *Higgs*, fails to show much more than that she was diagnosed with depression. Dr. Finizia's treatment notes show that he eventually diagnosed Plaintiff with major recurrent depression in 2011 and he treated her with Celexa over the years for anxiety and depression, but his notes are silent as to whether Plaintiff's depression resulted in functional limitations or required her to seek further treatment. "Without an opinion that a particular

-12-

impairment 'caused any functional limitation on [a claimant's] ability to work,' an ALJ is entitled to treat the impairment as non-severe and need not include any limitations resulting from it into the residual functional capacity finding." *Henson v. Comm'r of Soc. Sec.*, No. 2:12CV624), 2013 WL 2287088, (May 23, 2013), quoting *Clark v. Astrue*, 2012 WL 3309690, at *10 (N.D. Ohio June 5, 2012), *adopted and affirmed*, 2012 WL 3309685 (N.D. Ohio Aug. 13, 2012). Moreover, Dr. Finizia had indicated in his June 1, 2010 treatment note that Plaintiff's depression and anxiety were controlled on medication. *Id*. at 556. On May 14, 2011, however, in a part of his note labeled "aside," he indicated that Plaintiff was applying for disability for "psych reasons" and he documented her symptoms that she had a fear of death and a fear of not waking up, as well as panic attacks of a rapid onset, and she also reported that her daily activities were restricted and she had increased sleep and fatigue and was avoiding her family. *Id.* at 628.

Nevertheless, with no doctor opinions or other objective medical evidence establishing that Plaintiff's depression caused work-related limitations, and without Plaintiff otherwise meeting her burden of establishing that her depression was severe, the undersigned recommends that the Court find that substantial evidence supports the ALJ's Step Two determination that Plaintiff's depression was not a severe impairment.

### B.    OBESITY

Plaintiff also contends that the ALJ committed error by failing to consider her obesity in her decision. ECF Dkt. #13 at 13-14. SSA regulations require ALJs to consider the effects of obesity as part of their adjudication of a claim for benefits. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir.2011). SSR 02–lp recognizes that obesity may affect an individual's ability to perform the exertional functions of sitting, standing, walking, lifting, carrying, pushing, and pulling, as well as an individual's ability to perform postural functions such as climbing, balancing, stooping, and crouching. SSR 02–1p, 2000 WL 628049, at *6. However, SSR 02–lp does not mandate a particular mode of analysis for an obese disability claimant. *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir.2006). Rather, the Ruling simply recognizes that "obesity, in combination with other impairments, 'may' increase the severity of the other limitations." *Id.* at 418 (quoting SSR 02-1p).

-13-

Here, while Plaintiff correctly notes that she has been diagnosed with obesity, she did not present any evidence to the ALJ that her obesity impacted her ability to work. *See Cranfield v. Comm'r of Soc. Sec.*, 79 Fed. App'x 852, 857 (6th Cir.2003) (ALJ did not commit error in not addressing claimant's obesity in his decision when claimant failed to indicate that obesity was a significant impairment and neither claimant not doctors "offered any evidence to suggest that her weight was a significant impairment."); *see also Stevens v. Comm'r of Soc. Sec.,* 2013 WL 1399178 (N.D. Ohio Apr. 5, 2013)(holding that "[i]t is a mischaracterization of the Rule [SSR 02-1p] to suggest that the ALJ is obligated to consider obesity in every case" and finding that obesity was not medically determinable factor to consider in sequential evaluation because no evidence was presented to show that claimant's obesity increased the severity of her other impairments); *Smith v. Astrue, No.* 3:10CV1829, 2012 WL 1232272, at *4 (N.D. Ohio Apr. 12, 2012), unpublished (ALJ did not err in failing to address obesity in decision where claimant called attention to her height and weight, but failed to present any evidence that obesity impacted her ability to work); *Young v. Comm'r of Soc. Sec.*, No. 3:09CV 1984, 2011 WL 2182869, at *7 (N.D. Ohio June 6, 2011)(ALJ not required to address obesity in decision because although claimant provided evidence of obesity, no diagnosis of obesity existed, claimant failed to allege obesity as impairment, failed to complain of obesity in testimony, and failed to furnish evidence of impact obesity had on ability to work); *Benson v. Astrue*, No. 1: 10CV 1654, 2011 WL 6122944, at *9 (N.D.Ohio Nov.15, 2011), unpublished, Report and Recommendation adopted by 2011 WL 6122942 (N.D.Ohio Dec.9, 2011), unpublished (although record showed claimant's height and weight, ALJ did not err in failing to address obesity in decision because claimant failed to present ALJ with evidence of how weight impacted ability to work).

At the hearing before the ALJ in the instant case, Plaintiff discussed her weight with the ALJ and she stated that she weighed 240 pounds and was five feet seven inches tall. ECF Dkt. #11 at 50. She testified that her weight had increased due to thyroid issues and the stress from caring for her ill relatives. *Id.* at 51. Plaintiff did not report that her obesity caused any limitations in her ability to work. Nor did Plaintiff identify obesity as an impairment in her disability report or in her contacts with the agency. ECF Dkt. #11 at  at 166, 180, 195, 201, 202, 209. Moreover, none of Plaintiff's

doctors offered any limitations resulting from their obesity diagnoses and all of them recommended that she lose weight by eating better and increasing her exercise. *Id.* at 226, 234, 238, 526, 618, 624. While Dr. Sivak did comment that Plaintiff's "[d]ypsnea seems out of proportion to physical findings and previous PFT's and may be impacted by depression and weight," the ALJ accommodated Plaintiff's breathing difficulties in her RFC in conjunction with her finding that Plaintiff had the severe impairment of COPD and restricting her to limited light work with a sit/stand option, only occasional climbing of stairs and ramps, occasional bending, balancing and stooping, and no kneeling or crawling. *Id.* at 15. The ALJ also limited Plaintiff to work environments free from pulmonary irritants. *Id.*

Given Plaintiff's failure to identify obesity as one of her impairments, her failure to present evidence that her obesity increased the severity of her other limitations, and the lack of evidence from her medical sources as to limitations resulting from obesity, the undersigned recommends that the Court find that the ALJ did not commit reversible error in failing to address Plaintiff's obesity.

## VI.   CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court AFFIRM the decision of the Commissioner and DISMISS Plaintiff's complaint in its entirety with prejudice.


DATE: September 17, 2013

           */s/George J. Limbert*
           GEORGE J. LIMBERT
           UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).